UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

_____X
In re:                                 :
                                       :
Jeremiah O'Brien,                      :      Chapter 11
                                       :      Case No. 10-52610
        Debtor.                        :
_____X

Appearances:

| | |
|---|---|
| James M. Nugent, Esq. | For the Debtor |
| Harlow, Adams & Freidman, P.C. | |
| 300 Bic Drive | |
| Milford, CT | |
| | |
| Michael S. Wrona, Esq. | For Creditor |
| Halloran & Sage LLP | FTBK Investor LLC, as Trustee |
| One Goodwin Square | for NY Brooklyn Investor Trust 3 |
| 225 Asylum Street | |
| Hartford, CT | |

MEMORANDUM OF DECISION AND ORDER ON
DEBTOR'S OBJECTION TO CLAIM

Introduction

The debtor, Jeremiah O'Brien, objects to a proof of claim filed by creditor FTBK Investor LLC, as Trustee for NY Brooklyn Investor Trust 3 ("FTBK"). For the reasons that follow, the debtor's objection is overruled.

## Background[1]

The debtor holds a 100% interest in 531 Bergen, LLC ("Bergen LLC"). Bergen LLC owned real property in Brooklyn, New York. In June 2007, Bergen LLC executed a $1.8 million promissory note ("Note") to Washington Mutual Bank ("WaMu"). The Note was secured by a mortgage ("Mortgage") on Bergen LLC's real property, *i.e.*, an apartment building located at 531 Bergen Street, in Brooklyn ("Property"). The Note and Mortgage were subsequently sold to JPMorgan Chase Bank, NA ("JPMorgan").

Under the terms of the Note, interest on the principal was calculated at a rate of 6.35% per annum (*see* Note, §1 (doc. #245, Ex. A)), with an additional 5.00% interest if a default occurred (*see id.* at §9). Further, the parties negotiated a prepayment premium that would be due if there was an acceleration on the payment of the Note. (*See id.* at §6, and at "Prepayment Addendum to Promissory Note", §1.) The Note and Mortgage are governed by the New York law. (*See* Note at §11(e); Mortgage at §11.)

In October 2008, Bergen LLC failed to make its monthly mortgage payment and defaulted. On February 23, 2009, JPMorgan commenced a foreclosure proceeding against Bergen LLC. On August 21, 2009, Bergen LLC sought bankruptcy protection in the Eastern District of New York. *See In re 531 Bergen, LLC*, Case No. 09-47172 (ESS), Petition (Bankr. E.D.N.Y. Aug. 21, 2009). JPMorgan moved for relief from stay to continue with its foreclosure action, which was granted on June 17, 2010. On September 30, 2010, Bergen LLC's bankruptcy case was dismissed. See *In re 531 Bergen, LLC*, Case No. 09-47172 (ESS), Dismissal Order (Bankr. E.D.N.Y. Sept. 30, 2010).

On October 15, 2010, the debtor had the Property deeded to himself for no consideration. On October 26, 2010, the debtor filed this bankruptcy case.

On November 15, 2010, the Note and Mortgage were assigned to FTBK which continues to own that paper. On February 28, 2011, FTBK filed a proof of claim for

---

[1] Unless otherwise noted, the court draws the facts for this background from the parties "Stipulated Facts Regarding the Debtor's Objection to [FTBK]'s Proof of Claim" ("Stipulation"). (*See* doc. #245.)

$2,262,763.20. On March 6, 2011, the debtor filed an objection ("Objection") to that claim. He objects because FTBK claims default interest for the period of time when Bergen LLC was in bankruptcy, implicitly asserting that the protections of the automatic stay instituted by Bergen LLC's bankruptcy filing extend to him. The debtor further objects on the basis that the prepayment premium claimed by FTBK is an impermissible penalty. (*See* doc. #98).

On July 11, 2011, the debtor filed a "First Amended Plan of Reorganization" (doc. #214). Under that proposed plan, FTBK is classified as a holder of a secured, impaired claim. The debtor proposes to file a § 506 motion to determine the total amount of FTBK's secured claim, which "will then be paid in full in an amount re-amortized at the rate of 6% fixed interest per year for 25 years." (*Id.* at 9, §4.5.) There appears to be no dispute that the debtor is assuming the obligations of Bergen LLC's Note and Mortgage.

On August 10, 2011, FTBK filed the instant, amended proof of claim for $2,402,705.72, which removed any pre-petition claim for legal fees, escrow deficits, and fees receivable, and recalculated the default rate of interest rate. Although the debtor has not filed an objection to the amended claim, there is no question that his March 6, 2011 Objection applies to it (*see, e.g.*, Stipulation, ¶5.). Thus, the amended proof of claim and the Objection are the focus of this ruling.

For purposes of this Objection, the parties have submitted exhibits for the court's consideration, including the Note and Mortgage. (*See* Stipulation, Exhibit A: "Amended and Restated Promissory Note", including the "Prepayment Addendum to Promissory Note", (dated June 28, 2007); Exhibit B: "Amended and Restated Mortgage, Security Agreement, Assignment of Leases and Rents, and Fixture Filing" (dated June 28, 2007)).

## Discussion

"A proof of claim executed and filed in accordance with [the Bankruptcy Rules] shall constitute prima facie evidence of the validity and amount of the claim." Bankruptcy Rule 3001(f). FTBK has made the required prima facie showing. As the

objecting party, it is the debtor's burden to introduce evidence to rebut the presumption of the allowance of FTBK's claim.  *See* § 502(a); *see also In re Aulicino*, 48 B.R. 252 (Bankr. D. Conn. 1985); *In re Koloch*, 416 B.R. 375, 378 (Bankr. E.D.N.Y. 2009).

*Default Interest*[2]

The debtor does not object to all of the default interest FTBK claims.  Rather, it is that portion claimed for the period when the debtor's LLC, Bergen LLC, was in bankruptcy, *i.e.*, August 21, 2009 to September 30, 2010 ("Contested Default Interest").  As noted, that objection attempts to extend the benefits of the automatic stay applicable in Bergen LLC's case to protect claims against the debtor in his individual capacity.  That theory has been raised and rejected by this court, which recently held that a limited liability company, although wholly owned by a debtor, remains a separate legal entity.  *See In re Kochman*, Case No. 11-50111, Memorandum & Order at 4 (Bankr. D. Conn. Nov. 3, 2011) ("[W]hen an individual chooses to take advantage of the benefits of an artificial entity, he or she must also bear the corresponding burdens.").  Just as the court would not overlook the distinction between the limited liability company and the debtors in *Kochman* (resulting in the denial of a homestead exemption to the individual debtors), *see id.*, it will not blur that distinction here.  Therefore, the debtor's objection to the Contested Default Interest cannot be sustained.  To hold otherwise would give the debtor the benefit of the automatic stay that is limited to Bergen LLC.

*Prepayment Premium*

Courts have found premiums for prepayment and acceleration to be valid liquidating damages under New York law.  *See United Merchants & Manufacturers, Inc., v. The Equitable Life Assurance Society (In re United Merchants & Manufacturers, Inc.)*, 674 F.2d 134, 144 (2d Cir. 1982) ("Nothing in bankruptcy law or policy counsels against

---

[2]. It is noteworthy that the debtor has not offered any evidence in support of his default interest objection.

recognition of [a creditor's] claim[] for liquidated damages."); *see also In re St. Vincent's Catholic Med. Centers*, 440 B.R. 587, 597 (Bankr. S.D.N.Y. 2010). "[U]nder New York law[,] a contractually agreed upon sum for liquidated damages will be sustained where (1) actual damages may be difficult to determine and (2) the sum stipulated is not 'plainly disproportionate' to the possible loss." *Walter E. Heller & Co., Inc. v. American Flyers Airline Corp.*, 459 F.2d 896, 899 (2d Cir. 1972) (further citation omitted); *United Merchants & Manufacturers, Inc.*, 674 F.2d at 142 (same). Courts analyze such a provision "as of the time that the agreement is entered into", not when the damages are incurred. *Heller & Co.,* 459 F.2d at 898; *Saint Vincent's*, 440 B.R. at 594.

The analysis here begins with the language of the Note, the incorporated prepayment addendum ("Addendum"), and the Mortgage. Pursuant to § 6 of the Note: "*Borrower may prepay its obligation under this Note only if*, to the extent and on the terms and subject to the conditions set forth in an addendum to this Note attached hereto and incorporated herein by this reference. . . ." (Emphasis added.) The relevant portions of the Addendum provide:

> 3. <u>Provisions Applicable to All Prepayments</u>. Borrower expressly waives any right to prepay this Note except as provided in this Addendum. Therefore, *if the maturity of this Note is accelerated for any reason*, including, without limitation, the occurrence of any Event of Default, including without limitation an Event of Default under Section 4.13 of the [Mortgage], *than any subsequent tender of payment of this Note*, including any redemption following foreclosure of the [Mortgage], *shall constitute an evasion of the restrictions on prepayment set forth herein and shall be deemed a voluntary prepayment*. Accordingly, *Lender may impose as a condition to accepting any such tender*, and may bid at any sheriff's or trustee's sale under the [Mortgage], *and/or include in any* complaint for judicial foreclosure or any *claim in bankruptcy, as part of the indebtedness evidenced by this Note and secured by the [Mortgage], the Prepayment Premium that would have otherwise been payable hereunder for prepayment of this Note occurring on the date of such acceleration*. . . .
>
> * * *

> *Borrower acknowledges that: (a) it is a knowledgeable real estate investor*; (b) it fully understands the effect of the waivers set forth in this Addendum, (c) the making of the loan evidenced by this Note at the interest rates set forth in this Note is sufficient consideration for such waivers, and (d) Lender would not make the loan evidenced by this Note without such waivers.
>
> * * *

Addendum, §3 (emphasis added).

The corresponding Mortgage provides that an "Event of Default" occurs when, *inter alia*: "(a) Any regular monthly payment under the Note is not paid so that it is received by Lender within fifteen (15) days after the date when due, or any other amount secured by this [Mortgage] (including but not limited to any payment of principal or interest due on the Maturity Date, as defined in the Note) is not paid so that it is received by Lender when due".  Mortgage, § 5.1(a).  Further, "*[u]pon the occurrence of any Event of Default all sums secured hereby shall become immediately due and payable, without notice or demand*, at the option of the Lender . . ."  *Id.* at § 5.3 ("Remedies on Default") (emphasis added).

It is undisputed that a default occurred, which triggered an acceleration of the entire principal amount of the Note.  Moreover, the language of the Addendum is clear that the parties contractually agreed upon a prepayment premium and that the Lender, now FTBK, could require the inclusion of the prepayment premium as part of a claim in bankruptcy.  That is precisely what has occurred.  Therefore, the plain language of those instruments compels the conclusion that FTBK is entitled to its claim for the prepayment premium.  There is nothing in the record that would support any other conclusion. *Cf. Zeer v. Azulay*, 50 A.D.3d 781, 785, 860 N.Y.S.2d 527, 531 (N.Y. App. Div., 2d Dept. 2008) ("A party requesting that a court strike down a liquidating damages provision as an unenforceable penalty must demonstrate that the damages are not a reasonable measure of the actual loss resulting from the breach[,] and the actual loss is readily ascertainable.") (further citations omitted).

**Conclusion**

Accordingly, IT IS ORDERED that the debtor's objection to FTBK's proof of claim number 14, as amended, is overruled.

Dated this 23rd day of December 2011 at Bridgeport, Connecticut.

By the court

*Alan H. W. Shiff*
Alan H. W. Shiff
United States Bankruptcy Judge